**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | **CASE NO.  15-05865-jw** |
| **IN RE:** | ) | **CHAPTER 13** |
| **JASON JAMES HAWVER, SR.** | ) | |
| **KATHERINE KEISER HAWVER** | ) | **NOTICE OF MOTION FOR RELIEF** |
| **DEBTOR(s)** | ) | **FROM AUTOMATIC STAY** |
| | ) | **(11 U.S.C. § 362)** |

TO:  DEBTOR(S), TRUSTEE (if applicable) AND THOSE NAMED IN THE ATTACHED
MOTION:

PLEASE TAKE NOTICE THAT a hearing will be held on the attached Motion on:

**Date:** **March 29, 2016**
**Time:** **11:00 AM**
**Place:** **145 King Street, Room 225, Charleston, SC 29401**

Within 14 days after service of the attached Motion, the Notice of Motion, the

Movant's Certification of Facts (and a blank Certification of Facts for applicable to service on

pro se parties only), any party objecting to the relief sought shall:

1)      File with the Clerk a written objection to the 11 U.S.C. § 362 Motion;

2)      File with the Clerk a Certification of Facts;

3)      Serve on the Movant items 1 & 2 above at the address shown below; and

4)      File a certificate of such with the Clerk.

If you fail to comply with this procedure, you may be denied the opportunity to

appear and be heard on this proceeding before the court.

| | |
|---|---|
| DATE OF SERVICE: | February 27, 2016 |
| MOVANT: | Branch Banking and Trust Company |
| ATTORNEY: | /s/ Travis E. Menk |
| | Travis E. Menk, # 10686 |
| | Brock and Scott, PLLC |
| ATTORNEY'S ADDRESS: | 5121 Parkway Plaza Blvd, Ste 300 |
| | Charlotte, NC 28217 |
| | Phone: (704)369-0676 |
| | scbkr@brockandscott.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | **CASE NO.  15-05865-jw** |
| IN RE: | ) | **CHAPTER 13** |
| JASON JAMES HAWVER, SR. | ) | |
| KATHERINE KEISER HAWVER | ) | **MOTION FOR RELIEF** |
| DEBTOR(s) | ) | **FROM AUTOMATIC STAY** |
| | ) | **(11 U.S.C. § 362)** |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW Branch Banking and Trust Company (hereinafter "Movant"), a secured creditor in the above-captioned case, by and through counsel, Brock & Scott, PLLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a) on the following grounds:

1. That Branch Banking and Trust Company is a secured creditor of the Debtor(s) and thus a party in interest.

2. That the above-captioned Debtor(s) filed a petition seeking relief pursuant to Chapter 13 of the United States Bankruptcy Code in this District on or about November 1, 2015.

3. The Debtor holds title to the real property (hereinafter "Collateral") described in that Mortgage recorded in the Horry County Register of Deeds in Book 5100 at Page 2388 and recorded on August 7, 2008 (hereinafter "Mortgage") with an address of 1093 Brentford Place, Myrtle Beach, SC 29579.  A copy of the Mortgage and Note are attached hereto and incorporated herein as Exhibit "A".

4. Movant holds a Promissory Note secured by the Mortgage from the Debtor in the original principal amount of $406,100.00 and dated August 7, 2008 (hereinafter "Note").

5. The Debtor has scheduled the value of the Collateral at $451,000.00.

6. Upon information and belief, the approximate payoff due and owing to Movant as of February 16, 2016 is $422,926.54.

7.      As a result of the averments in paragraphs 5 through 6, there exists insignificant equity in the subject property.

8.      The loan is presently in default and is due for the December 1, 2015 post-petition payment.

9.      As a result, Movant lacks adequate protection of its interest in the Collateral. By virtue of such lack of protection, good cause exists to lift the automatic stay imposed hereunder.  Otherwise, Movant will suffer irreparable harm with respect to Movant's interest in the Collateral.

10.     Movant agrees to waive any claim that may arise under 11 U.S.C. Section 503(b) or Section 507(b) as a result of this Order.  Movant further agrees that any funds realized from the foreclosure sale, in excess of all liens, costs, and expenses, will be paid to the Trustee.

WHEREFORE, Movant respectfully requests the entry of an Order:

1.      That modifies the automatic stay provisions of 11 U.S.C. § 362 and that allows Branch Banking and Trust Company to immediately proceed to foreclose its security interest in the property described in Exhibit "A" annexed to this Motion and otherwise pursue any remedies available under state law to recover and liquidate its collateral;

2.      That waives the effect of Bankruptcy Rule 4001 (a)(3); and

3.      Provides for such other and further relief as the Court deems just and proper.

This, the 27vj  day of February 2016.

/s/ Travis E. Menk
Travis E. Menk, # 10686
Brock and Scott, PLLC
5121 Parkway Plaza Blvd, Ste 300
Charlotte, NC 28217
Phone: (704)369-0676
scbkr@brockandscott.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.  15-05865-jw |
| | ) | CHAPTER 13 |
| JASON JAMES HAWVER, SR. | ) | |
| KATHERINE KEISER HAWVER | ) | |
| DEBTOR(s) | ) | CERTIFICATION OF FACTS |
| | ) | |

In the above-entitled case, in which Branch Banking and Trust Company from automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

1.  <u>Nature of Movant's Interest</u>:  Movant holds the first mortgage on property located at 1093 Brentford Place, Myrtle Beach, SC 29579.

2.  Brief Description of Security Agreement (copy attached):  Mortgage

3.  <u>Description of Property Encumbered by Stay (Include serial number, lot and block number, etc.</u>:

All and singular, that certain piece, parcel, or tract of land together with improvements  thereon, situate, lying and being in Conway & Dogwood Neck Townships, County of Horry, State of South Carolina, being identified as Lot 421 as shown upon a plat entitled "Final Subdivision Plat of Amherst Phase 1 of Berkshire Forest, PDD" prepared for Centex Homes by Thomas and Hutton Engineering Co dated December 7, 2007 and recorded on March 18, 2008 in Plat Book 236 at Page 241, records of Horry County, SC, said plat is made a part and parcel hereof by reference hereto.

Subject to that certain declaration of covenants and restrictions for Berkshire Forest recorded August 24, 2004  in Deed Book 2781, at Page 994 and that certain Amherst Phase 1 supplemental declaration of covenants, conditions and restrictions for Berkshire Forest filed on March 24, 2008 in Deed Book 3322, at Page 2642, in the Office of the Register of Deeds for Horry County, South Carolina, together with any other amendments and supplements thereto

Also subject to that certain declaration of restrictive covenants (wetlands - Amherst Phase 1) recorded on April 1, 2008 in Deed Book 3325, at Page 1070, in the office of the register of deeds for Horry County, South Carolina, together with any amendments and supplements thereto.

Also subject to all other restrictions, reservations, easements and rights of way of record, including those which may be as set out on the within referenced subdivision plat

This being the identical property conveyed to Jason J Hawver, Sr by deed of Centex Homes, a Nevada General Partnership, dated March 27, 2008, and recorded April 2, 2008, in Deed Book 3325, at Page 1140, in the Office of the register of deeds for Horry County, South Carolina.

Further, this being the identical property conveyed unto Jason James Hawver Sr. and Katherine K. Hawver by deed of Jason J Hawver, Sr dated and recorded on 8/7/2008 in Book 3355 at Page 904 in the Office of the ROD for Horry County, South Carolina

4.    <u>Basis for Relief</u>:  Lack of adequate protection. §362(d)(1) and (2).

5.    <u>Prior Adjudication by Other Courts, copy attached (Decree of foreclosure,
Order for possession, Levy of execution, etc., if applicable</u>:  N/A

6.    <u>Valuation of Property, copy of Valuation attached</u>:
        Fair Market Value          $451,000.00
        Liens (Mortgages)          $422,926.54
        Net Equity                 $28,073.46
        Source/Basis of Value      Schedule

7.    <u>Amount of Debtor estimated equity (using figures from paragraph 6)</u>:
$28,073.46

8.    <u>Month and Year in which first direct post-petition payment came due to Movant
(if applicable)</u>: December 2015

9.    (a) <u>For Movant / Lienholder ( if applicable): list or attach a list of all post-
petition payments received directly from debtor(s), clearly showing date
received, amount and month and year of which each such payment was
applied.</u>[1]

      (b) <u>For Objecting party (if applicable): list or attach a list of all post-petition
payments included in the Movant's list from (a) above which objecting party
disputes as having been made. Attach written proof of such payment(s) or a
statement as to why such proof is not available at the time of filing this
objection.</u>

10.   <u>Month and year for which post-petition account of Debtor(s) is due as of the
date of this Motion</u>: December  2015

      See attached payment history.

---

[1]    This requirement may not be met by the attachment of a payment history generated by the Movant. Such
attachment may be utilized as a supplement to a complete and detailed response to (9)(a) above, which should be
shown on this certification.

**Post-Petition History**

Loan # ****5206
Borrower: Jason James Hawver, Sr.
Katherine Keiser Hawver

Filing Date: November 1, 2015

| Post Due Date | Payment Amount Due | Date Received | Payment Amount Received | Check # | Suspense |
|---|---|---|---|---|---|
| 12/1/2015 | $1,775.06 | N/A | N/A | N/A | N/A |
| 01/1/2016 | $1,775.06 | N/A | N/A | N/A | N/A |
| 02/1/2016 | $1,775.06 | N/A | N/A | N/A | N/A |
| | **TOTAL $5,325.18** | | **TOTAL PAID $0.00** | | |

Dated: February 47, 2016

/s/ Travis E. Menk
Travis E. Menk, # 10686
Brock and Scott, PLLC
5121 Parkway Plaza Blvd, Ste 300
Charlotte, NC 28217
Phone: (704)369-0676
scbkr@brockandscott.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|                              |     |                        |
|------------------------------|-----|------------------------|
|                              | )   |                        |
| IN RE:                       | )   |                        |
| **JASON JAMES HAWVER, SR.**  | )   | **CASE NO.  15-05865-jw** |
| **KATHERINE KEISER HAWVER**  | )   | **CHAPTER 13**         |
| **DEBTOR(s)**                | )   |                        |
|                              | )   |                        |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he/she is over eighteen (18) years of age and that the MOTION FOR RELIEF FROM AUTOMATIC STAY, NOTICE OF MOTION, CERTIFICATION OF FACTS AND CERTIFICATE OF SERVICE in the above captioned case were this day served upon the below named persons by mailing, postage prepaid, first class mail a copy of such instrument to each person(s), parties, and/or counsel at the addresses shown below:

Jason James Hawver, Sr.
1093 Brentford Pl
Myrtle Beach, SC 29579

Katherine Keiser Hawver
1093 Brentford Pl
Myrtle Beach, SC 29579

James M. Robbins
PO Box 50606
Myrtle Beach, SC 29579

Pamela Simmons-Beasley
1813 Laurel Street
Columbia, SC 29201

This, the 27ȷ day of February 2016.

Brock and Scott, PLLC
/s/ Danielle Vasquez
Danielle Vasquez
Paralegal
5121 Parkway Plaza Blvd, Ste 300
Charlotte, NC 28217
Phone: (704) 369-0676
scbkr@brockandscott.com

Return To

Prepared By

Kimberly Hill
301 College Street
SC Clsg Center
Greenville, SC  29601

Instrument# 2008000105138, MTG BK
5100 PG  2388 DOCTYPE  002  08/07/2008
at 01 25 38 PM, 1 OF 26
BALLERY V SKIPPER, HORRY COUNTY,
SC REGISTRAR OF DEEDS

————————————————[Space Above This Line For Recording Data]————————————————

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are
also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated   AUG 0 7 2008
together with all Riders to this document
**(B) "Borrower"** is **Jason James Hawver, Sr and Katherine K Hawver**

Borrower is the mortgagor under this Security Instrument
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the mortgagee
under this Security Instrument**  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P O  Box 2026, Flint, MI  48501-2026, tel  (888) 679-MERS

---

**SOUTH CAROLINA**   Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS  Form 3041  1/01

VMP® 6A(SC) (0409) 01
Page 1 of 15
VMP Mortgage Solutions, Inc

**(D) "Lender"** is Branch Banking and Trust Company

Lender is a **Corporation**
organized and existing under the laws of **NORTH CAROLINA**
Lender's address is **223 West Nash Street, Wilson, NC    27893**

**(E) "Note"** means the promissory note signed by Borrower and dated **as of the date hereof**
The Note states that Borrower owes Lender **Four Hundred Six Thousand One Hundred And Zero/100**                                                                                                      Dollars
(U S $ **406,100 00**                ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 01, 2039**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property "

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | [x] Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | [x] Other(s) [specify] |
| | | **Constr/Perm Rider** |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

**(L) "Escrow Items"** means those items that are described in Section 3

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C  Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used



in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors    and    assigns    of    MERS,    the    following    described    property    located    in    the
**County**                                       of                                       **Horry**
[Type of Recording Jurisdiction]                                       [Name of Recording Jurisdiction]


See attached Exhibit "A" for Legal Description



Parcel ID Number   1 6 3 - 5 6 - 0 1 - 0 4 7                                which currently has the address of
**1093 Brentford Place**                                                                              [Street]
**Myrtle Beach**                                       [City] , South Carolina **29579**            [Zip Code]
("Property Address")

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns,) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property "  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

VMP® 6A(SC) (0409) 01                    Page 3 of 15                    Form 3041   1/01

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

ALL AND SINGULAR, that certain piece, parcel, or tract of land together with improvements thereon, situate, lying and being in Conway & Dogwood Neck Townships, County of Horry, State of South Carolina, being identified as Lot 421 as shown upon a plat entitled "Final Subdivision Plat of Amherst Phase 1 of Berkshire Forest, PDD" prepared for Centex Homes by Thomas & Hutton Engineering Co dated December 7, 2007 and recorded on March 18, 2008 in Plat Book 236 at Page 241, records of Horry County, SC, said plat is made a part and parcel hereof by reference hereto

SUBJECT TO that certain Declaration of Covenants and Restrictions for Berkshire Forest recorded August 24, 2004 in Deed Book 2781, at Page 994 and that certain Amherst Phase 1 Supplemental Declaration of Covenants, Conditions and Restrictions for Berkshire Forest filed on March 24, 2008 in Deed Book 3322, at Page 2642, in the Office of the Register of Deeds for Horry County, South Carolina, together with any other amendments and supplements thereto

ALSO SUBJECT TO that certain Declaration of Restrictive Covenants (wetlands - Amherst Phase 1) recorded on April 1, 2008 in Deed Book 3325, at Page 1070, in the Office of the Register of Deeds for Horry County, South Carolina, together with any amendments and supplements thereto

ALSO SUBJECT TO all other restrictions, reservations, easements and rights of way of record, including those which may be as set out on the within referenced subdivision plat

This being the identical property conveyed to Jason J Hawver, Sr by Deed of Centex Homes, a Nevada General Partnership, dated March 27, 2008, and recorded April 2, 2008, in Deed Book 3325, at page 1140, in the Office of the Register of Deeds for Horry County, South Carolina

FURTHER, this being the identical property conveyed unto said Mortgagor by Deed of Jason J Hawver, Sr dated 08/07/2008 and recorded simultaneously herewith in the Office of the Register of Deeds for Horry County, South Carolina

**TMS No : 163-56-01-047**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

**1  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S currency However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2  Application of Payments or Proceeds** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3  Funds for Escrow Items** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4   Charges; Liens** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5  Property Insurance**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender  but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6  Occupancy**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7  Preservation, Maintenance and Protection of the Property, Inspections**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8  Borrower's Loan Application**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9  Protection of Lender's Interest in the Property and Rights Under this Security Instrument**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10  Mortgage Insurance**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance "  Further

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund**



**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination

**11  Assignment of Miscellaneous Proceeds, Forfeiture** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12  Borrower Not Released, Forbearance By Lender Not a Waiver**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13  Joint and Several Liability, Co-signers, Successors and Assigns Bound**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14  Loan Charges**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15  Notices**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16 Governing Law, Severability, Rules of Construction** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17 Borrower's Copy** Borrower shall be given one copy of the Note and of this Security Instrument

**18 Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19 Borrower's Right to Reinstate After Acceleration** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20 Sale of Note, Change of Loan Servicer, Notice of Grievance** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21  Hazardous Substances**  As used in this Section 21  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law  (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup



NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

**22  Acceleration, Remedies**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise)  The notice shall specify (a) the default, (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument

**23  Release**  Upon Payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void  Lender shall release this Security Instrument  Borrower shall pay any recordation costs  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

**24  Homestead Waiver**  Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law

**25  Waiver of Appraisal Rights**  The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal  The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction  TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY  This waiver shall not apply so long as the Property is used as a dwelling place as defined in Section 12-37-250 of the South Carolina Code of Laws

**26  Future Advances**  The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs

 6A(SC) (0409) 01        Page 13 of 15        Form 3041   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Signed, sealed and delivered in the presence of

_Colleen Morgan_

_Jason James Hawver, Sr._ (Seal)
Jason James Hawver, Sr            -Borrower

_Katherine K Hawver_ (Seal)
Katherine K Hawver            Borrower

_____ (Seal)
            -Borrower

_____ (Seal)
            -Borrower

_____ (Seal)
            Borrower

_____ (Seal)
            -Borrower

_____ (Seal)
            Borrower

_____ (Seal)
            Borrower

VMP® 6A(SC) (0409) 01            Page 14 of 15            Form 3041  1/01

**STATE OF SOUTH CAROLINA,**                                    HORRY      **County ss**

    I,    the undersigned Notary Public                do hereby certify that
Jason James Hawver, Sr and Katherine K Hawver

personally appeared before me this day and acknowledged the due execution of the foregoing instrument

Witness my hand and official seal this    7th    day of  August, 2008

Notary Public for South Carolina

My Commission Expires  11/15/1X

VMP-6A(SC) (0409) 01                     Page 15 of 15                                Form 3041  1/01

MIN #  ████████████████

# ADJUSTABLE RATE NOTE
**(1-Year Treasury Index - Rate Caps - Fixed Rate Conversion Option)**
**(Assumable during Life of Loan unless Converted - Convertible 1st through 5th Change Date)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT  THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALSO CONTAINS AN OPTION TO CONVERT MY ADJUSTABLE INTEREST RATE TO A FIXED RATE.**

AUG 0 7 2008                    **Myrtle Beach**                          SOUTH CAROLINA
[Date]                              [City]                                    [State]

                            **1093 Brentford Place**
                            **Myrtle Beach, SC   29579**
                                [Property Address]

1.   **BORROWER'S PROMISE TO PAY**
        In return for a loan that I have received, I promise to pay U S $ **406,100.00**                        (this amount is called "Principal"), plus interest, to the order of the Lender  The Lender is  **Branch Banking and Trust Company**

I will make all payments under this Note in the form of cash, check or money order
        I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

2   **INTEREST**
        Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly rate of           **7.250** %  The interest rate I will pay will change in accordance with Sections 4 or 5 of this Note
        The interest rate required by this Section 2 and Sections 4 or 5 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note

3.   **PAYMENTS**
        **(A) Time and Place of Payments**
        I will pay principal and interest by making a payment every month
        I will make my monthly payment on the first day of each month beginning on  **See Addendum A**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on  **September 01, 2039**              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "
        I will make my monthly payments at  **223 West Nash Street, Wilson, NC   27893**

or at a different place if required by the Note Holder
        **(B) Amount of My Initial Monthly Payments**
        Each of my initial monthly payments will be in the amount of U S  $  **See Addendum A**            This amount may change
        **(C) Monthly Payment Changes**
        Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 or 5 of this Note

████████████████████████████████████████████████████████████████

Date) - Single Family - Freddie Mac UNIFORM INSTRUMENT

**VMP**®-890N (0404) 01                    Form 5511 3/04
VMP Mortgage Solutions  Inc (800)521-7291
Page 1 of 5                              Initials

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **September, 2011**                    , and may change on that day every 12th month thereafter  Each date on which my interest rate could change is called a "Change Date "

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information  The Note Holder will give me notice of this choice

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and three quarters** percentage point(s) (                    **2.750 %**) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than                    **9.250 %** or less than                    **5.250 %**  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Two**                    percentage point(s) (                    **2.000 %**) from the rate of interest I have been paying for the preceding 12 months  My interest rate will never be greater than **12.250 %** (the "Maximum Rate")

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**5.    FIXED INTEREST RATE CONVERSION OPTION**

**(A) Option to Convert to Fixed Rate**

I have a Conversion Option which I can exercise unless I am in default or this Section 5(A) will not permit me to do so  The "Conversion Option" is my option to convert the interest rate I am required to pay by this Note from an adjustable rate with interest rate limits to the fixed rate calculated under Section 5(B) below

The conversion can only take place on a date(s) specified by the Note Holder during the period beginning on the first Change Date and ending on the fifth Change Date  Each date on which my adjustable interest rate can convert to the new fixed rate is called the "Conversion Date "

If I want to exercise the Conversion Option, I must first meet certain conditions  Those conditions are that (i) I must give the Note Holder notice that I want to do so, (ii) on the Conversion Date, I must not be in default under the Note or the Security Instrument, (iii) by a date specified by the Note Holder, I must pay the Note Holder a conversion fee of US $ 250.00                    , and (iv) I must sign and give the Note Holder any documents the Note Holder requires to effect the conversion

**(B) Calculation of Fixed Rate**

My new, fixed interest rate will be equal to the Federal Home Loan Mortgage Corporation's required net yield as of a date and time of day specified by the Note Holder for (i) if the original term of this Note is greater than 15 years, 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five eighths percentage points (0 625 %), or (ii) if the original term of this Note is 15 years or less, 15-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus five eighths percentage points (0 625 %)  If this required net yield cannot be determined because the applicable commitments are not available, the Note Holder will determine my interest rate by using comparable information  My new rate calculated under this Section 5(B) will not be greater than the Maximum Rate stated in Section 4(D) above

**(C) New Payment Amount and Effective Date**

If I choose to exercise the Conversion Option, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe on the Conversion Date in full on the Maturity Date at my new fixed interest rate in substantially equal payments The result of this calculation will be the new amount of my monthly payment Beginning with my first monthly payment after the Conversion Date, I will pay the new amount as my monthly payment until the Maturity Date

**6.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due A payment of Principal only is known as a "Prepayment " When I make a Prepayment, I will tell the Note Holder in writing that I am doing so I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment However, any reduction due to my partial Prepayment may be offset by an interest rate increase

**7.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**8.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be **5.000** % of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees

**9.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note Some of those conditions are described as follows

**(A) UNTIL I EXERCISE MY CONVERSION OPTION UNDER THE CONDITIONS STATED IN SECTION 5 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**(B) IF I EXERCISE MY CONVERSION OPTION UNDER THE CONDITIONS STATED IN SECTION 5 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 12(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

Form 5531 3/04

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Jason James Hawver, Sr._ _____ (Seal)
Jason James Hawver, Sr                    -Borrower

_Katherine K. Hawver_ _____ (Seal)
Katherine K Hawver                         -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

*[Sign Original Only]*